UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONNIE WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-960 |
| | § | |
| ENRIQUE DE-VALDENEBRO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie Williams, a Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID) inmate, filed a civil rights suit under 42 U.S.C. § 1983 alleging denial of medical care in violation of the Eighth Amendment. (Docket No. 1.) Plaintiff sues Enrique De-Valdenbro, Alfredo Mayuman and Gideon Daniel, medical doctors employed by the University of Texas Medical Branch (UTMB). Before the Court are Defendants' motions to dismiss (Docket Nos. 15 & 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6), to which Plaintiff has filed a response (Docket No. 24).

Based on the pleadings and attached exhibits, the motions to dismiss and related memoranda, and the applicable law, the Court will grant the motions to dismiss for the reasons explained below.

**I.     Background**

Plaintiff's claims stem from treatment received for diabetes while incarcerated in the TDCJ-CID's Holiday, Gist and Stringfellow units between January 27, 2011, and October 28, 2011. (Docket No. 2 at 1-4.) Plaintiff alleges that Defendants failed to adequately monitor and properly treat his fluctuating blood sugar levels during this time. Although he does not allege

any specific incident or injury, Plaintiff alleges that the failure to properly control his diabetes caused him to feel chronically ill and placed him in danger of serious diabetic complications.

Defendants move to dismiss Plaintiff's claims, asserting that even if Plaintiff's well-pled factual allegations are true, they do not show that Defendants were deliberately indifferent to Plaintiff's medical needs. Defendants also assert that they are entitled to qualified immunity from suit because Plaintiff's complaint, supporting memorandum and attached medical records show that Plaintiff received treatment for his diabetes and it was not clearly established during the time in question that the treatment provided was constitutionally deficient.

## II. Applicable Legal Standards

### A. Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to Relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly,* 550 U.S. at 562-63 ("*Conley*'s 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly,* 550 U.S. 544).

In *Ashcroft v. Iqbal,* the Supreme Court elaborated on the two principles underlying its decision in *Twombly.* 556 U.S. 662, 678-79 (2009). First, under Rule 8(a)(2), plaintiffs are not required to include "'detailed factual allegations,' but more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' is needed." *Id.* (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly,* 550 U.S. at 557).

Second, the Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief - including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly,* 550 U.S. 544, 127 S. Ct. at 1964-65); *see also S. Scrap Material Co. v. ABC Ins. Co. (In re S. Scrap Material Co.),* 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 555, 570), *cert. denied*, 129 S. Ct. 1669 (2009). "Conversely, 'when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief,' this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier,* 503 F.3d at 401 (quoting *Twombly,* 550 U.S. 544, 127 S. Ct. at 1966).

A court generally must limit itself to the contents of the pleadings in considering a Rule 12(b)(6) motion but may consult documents attached to the defendant's motion if "'they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)). In addition, "a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983); *accord La Porte Constr. Co. v. Bayshore Nat'l Bank of La Porte,* 805 F.2d 1254, 1255 (5th Cir. 1986). "Although defendants bear the burden of pleading and proving affirmative defenses, where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted." *In re Dynegy, Inc. Secs. Litig.,* 339 F. Supp.2d 804, 819 (S.D. Tex. 2004).

"A document filed *pro se* is 'to be liberally construed,' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2000).

### B. Deliberate Indifference Standard

To state a colorable claim for denial of medical care under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)." Deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994); *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton,* 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322–23, 102 S. Ct. 2452, 73 L. Ed.2d 28 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble,* 429 U.S. at 107–08; *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979).

### III. Analysis

#### A. Plaintiff's Allegations

Plaintiff's complaint, supporting declaration and attached exhibits present the following facts. On January 27, 2011, Plaintiff underwent a physical exam and medical history evaluation at the Holliday Unit and was noted to be a non-insulin-dependent Type-2 diabetic. (Docket No. 2 at 1.) Two days prior to this exam, Plaintiff had been prescribed the medications Glyburide and Metformin for his diabetes, which continued until July 2011. (Docket No. 2-1 at 3.) Over

the next ten months Plaintiff was seen at least thirteen times by medical providers regarding his diabetes. (Docket Nos. 1 at 1-4; 2 at 1-4.) On February 23, 2011, Plaintiff was seen by Defendant Mayuman, who ordered tests to check Plaintiff's blood sugar. (Docket No. 2 at 1.) Although the test results received the following day showed Plaintiff's A1C level to be 12.7, which Plaintiff describes as "dangerously high," he was not informed of these results and Defendants did not prescribe any additional medications or treatment at that time. (Id.) Plaintiff filed numerous medical requests over the next several months complaining that he was "not feeling well." (Id.) Despite his complaints, Plaintiff did not see a doctor again until June 20, 2011, when Defendant De-Valdenebro adjusted Plaintiff's medications and prescribed additional medications including insulin injections. (Id. at 1-2; Docket No. 2-1 at 3.) Plaintiff alleges that these changes were not sufficient to immediately bring his diabetes under control and that his blood sugar levels remained "dangerously high." (Docket No. 2 at 2.) On June 27, 2011, Plaintiff's glucose level was measured at 148, down from 363 on February 23, 2011. (Docket No. 2-1 at 2.) On July 7, 2011, Plaintiff again saw Defendant De-Valdenebro who ordered laboratory tests and chronic care office visits, established a care plan including "fasting accuchecks" for fifteen days, adjusted Plaintiff's existing medications, and ordered new medications. (Docket Nos. 1 at 5; 2-1 at 2–3.) Plaintiff asserts that these changes were also ineffective and did not promptly bring his diabetes under control. (Docket No. 1 at 5.) On August 9, 2011, Plaintiff was again seen by Defendant De-Valdenebro who increased Plaintiff's insulin medication and ordered more laboratory testing. (Docket Nos. 2 at 2; 2-1 at 4.) Plaintiff alleges that this visit occurred only after his family complained to the warden about his treatment. (Docket No. 1 at 5.) On August 10, 2011, Plaintiff was transferred to the Gist Unit and requested a sick call because he was not feeling well due to his diabetes. (Id.) On August

16, 2011, Plaintiff was seen by Defendant Daniel at the Gist Unit who reviewed Plaintiff's treatment and continued his existing medications. (Docket No. 2-1 at 5.) On September 16, 2011, Plaintiff received a Chronic Care exam from Defendant Daniel, who increased Plaintiff's medications and also reiterated the importance of exercise, diet and medication compliance by Plaintiff. (Docket No. 2-1 at 7-15.) Plaintiff asserts that Defendant Daniel "over prescribed" medications at this visit causing him to experience hematuria (blood in the urine). (Docket No. 2 at 2.) Defendant Daniel also ordered routine lab work to measure Plaintiff's blood sugar twice a day for seven days, ordered various other procedures, and scheduled a follow-up visit in fourteen days to review Plaintiff's blood sugar levels. (Docket No. 2-1 at 10, 12–13.) On September 23, 2011, Plaintiff was again seen by Defendant Daniel who adjusted Plaintiff's medications; however, Plaintiff asserts that Daniel continued the "toxic" dosage of Metformin. (Docket Nos. 2 at 2; 2-1 at 14–15.) Plaintiff alleges that lab results from October 28, 2011, showed that his blood sugar remained "dangerously high" (Id.) On December 19, 2011, after being transferred to the Byrd Unit, Plaintiff received another exam which showed his blood sugar was still high and his medications were increased again. (Id.) Plaintiff states that it was not until January 6, 2012, after being transferred to the Stringfellow Unit that he was allowed to review his medical records and learned that his diabetes had been "out of control" for over a year. (Id. at 3.) Plaintiff alleges that he could have suffered permanent organ damage or even been killed due to the improper treatment he received during the time-period addressed in his complaint. (Id.) Plaintiff further complains that no tests were ever conducted to assess any permanent damage he may have suffered. (Id.)

### B.     Sufficiency of Plaintiff's Allegations

Plaintiff's pleadings and attached exhibits clearly show that he received treatment for his diabetes throughout the timeframe addressed in his complaint.  Records included with Plaintiff's complaint and supporting memorandum show that Plaintiff had already been receiving oral medications to control his diabetes before his condition allegedly began to worsen.  Plaintiff does not allege that he suffered any serious symptoms or illness prior to Defendant Mayuman ordering lab tests on February 23, 2011.  Plaintiff's primary claim against Defendant Mayuman is that he did not inform Plaintiff of the lab results or order any additional treatment based on these tests, which Plaintiff contends showed his blood sugar levels to be "dangerously high."  Plaintiff asserts that the A1C reading from these lab tests establishes that Mayuman was subjectively aware of a substantial risk of serious harm to Plaintiff.  However, even accepting Plaintiff's characterization of this reading as "dangerously high," Plaintiff has not presented facts showing that Mayuman failed to exercise his professional judgment when he decided to continue Plaintiff's existing treatment.  Although Plaintiff asserts that this was a poor decision and may even have amounted to medical malpractice, Plaintiff has not alleged any facts showing that the decision rose to the level of deliberate indifference.

Plaintiff also asserts that the alleged four-month delay in providing further tests and treatment, despite Plaintiff's repeated complaints of "not feeling well," is sufficient to state a plausible Eighth Amendment claim.  The Fifth Circuit has held that delay in providing medical care violates the Eighth Amendment only if it is due to deliberate indifference and "results in substantial harm." *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).  Although Plaintiff asserts that he was in extreme danger and could have suffered permanent organ damage or death during this time, such "conclusory allegations" and "unwarranted deductions" are not entitled to

the presumption of truth. *R2 Investments LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir. 2004)). The only actual harm allegedly suffered by Plaintiff during this time was a general feeling of "illness" and "not feeling well." However, even assuming this qualifies as "substantial harm," which is doubtful, Plaintiff has not alleged facts showing that the delay was due to deliberate indifference. Plaintiff has not alleged facts showing that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To the contrary, Plaintiff's pleadings and attached exhibits show that even during the time when he was complaining of not feeling well, his condition was being monitored and he was receiving treatment. Although Plaintiff asserts that Defendants should have realized more quickly that the treatment was insufficient, he does not present facts showing that Defendants subjectively came to such a realization earlier but ignored Plaintiff's needs or refused to take timely action. In fact, Plaintiff's only basis for asserting that Defendants were subjectively aware of Plaintiff's need for additional treatment is that he submitted numerous sick call requests complaining generally of "not feeling well." However, based on the facts that Plaintiff had recently been evaluated, was receiving treatment, and was not reporting any serious complications, Defendants failure to act on these complaints does not show deliberate indifference. Defendants were not required to immediately reevaluate Plaintiff or alter his treatment protocol based on Plaintiff's generalized complaints and lay opinion regarding the quality of the care he was receiving. Plaintiff's assertion that his treatment was constitutionally deficient merely because it did not produce immediate results is also unfounded. The decision to continue Plaintiff on his existing treatment

for several months before prescribing more invasive evaluations and treatments does not show deliberate indifference. Thus, Plaintiff's allegations based on delay in reevaluating his condition or modifying his diabetes treatment regimen do not state an Eighth Amendment claim.

Plaintiff's allegations regarding the sufficiency of the care provided after the July 7, 2011, reevaluation are also insufficient to make out a constitutional claim. Plaintiff's pleadings and attached materials show that Plaintiff received extensive testing, monitoring and treatment throughout the period following his reevaluation. Although Plaintiff alleges that the initial treatments were inadequate and required numerous adjustments, this chronicle of events does not show that Defendants were deliberately indifferent to Plaintiff's needs. Instead, these facts merely show that Defendants were actively trying to fine-tune Plaintiff's treatment regimen to optimally control of his condition. Neither Defendants' failure to immediately bring Plaintiff's diabetes under control, nor Plaintiff's disagreement with the treatment decisions made by Defendants--even if supported by valid medical evidence--are sufficient to support a finding of deliberate indifference. It is well-established that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). Plaintiff has not alleged any such exceptional circumstances here.

Finally, Plaintiff does not allege that he suffered any cognizable injury as a result of Defendants' acts or omissions. As previously discussed, Plaintiff's hypothetical assertion that he could have suffered permanent injury or death is not a sufficient basis for relief. Under the PLRA, claims for damages based on mental or emotional injury are not cognizable absent a showing of actual physical injury. 42 U.S.C. § 1997e(c). Although the statute does not define

"physical injury," the Fifth Circuit has held that the injury must be "more than *de minimus*." *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). Plaintiff's vague allegations of not feeling well and being placed "in serious jeopardy" of various hypothetical injuries do not satisfy this standard. (Docket No. 1 at 4.)

Thus, the Court concludes that Plaintiff's complaint, supporting memorandum and attached exhibits do not present a plausible Eighth Amendment claim for denial of medical care and Defendants are entitled to dismissal under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Because Plaintiff's allegations do not show a constitutional violation, the Court need not address the issue of qualified immunity.

### ORDER

Based on the foregoing, it is ORDERED that:

1. Defendants Gideon Daniels and Enrique De-Valdenbro's Motion to Dismiss (Docket No. 15) is GRANTED.

2. Defendant Alfredo Mayuman's Motion to Dismiss (Docket No. 20) is GRANTED.

3. This case is CLOSED.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 10th day of September, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE